UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

Donna Webster-Cato,                                        20 Civ. 10968

                        Plaintiff,        :        **COMPLAINT AND JURY DEMAND**

            - against -                   :        <u>**JURY TRIAL DEMANDED**</u>

Liberty Coca-Cola Beverages LLC,          :

                        Defendant.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

<u>**NATURE OF THE ACTION**</u>

1.      This case is about an older African-American woman with multiple disabilities that worked in a factory for more than 17 years, until a new company assumed operation of the business in 2017 and then unlawfully discriminated against her and fired her in 2018.

2.      This is an action to redress unlawful discrimination based on disability, age and race/color, and unlawful termination of employment, and retaliation.

3.      The claims in this action arise under:

     a.      the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. 12101 *et seq*.;

     b.      The New York State Human Rights Law, as amended ("NYSHRL"), Art. 15 of the New York Executive Law, N.Y. Exec. L. § 290 *et seq.;*

     c.      Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.;*

     d.      The Age Discrimination in Employment Act of 1967 ("ADEA"),  29 U.S.C. § 621 *et seq.*; and

     e.      the Civil Rights Act of 1866, 42 U.S.C. § 1981.

4.      The applicable laws broadly prohibit an employer from discriminating and retaliating against an employee on the basis of membership in a protected class and exercising protected rights.

## THE PARTIES, JURISDICTION AND VENUE

5.      Plaintiff Donna Webster-Cato ("Plaintiff") is an over age 50 African-American woman with multiple disabilities, residing in New York.

6.      Defendant Liberty Coca-Cola Beverages LLC ("Defendant" or the "Company") is a Foreign Limited Liability Company doing business in New York, and having a principal place of business and/or address at 115 Fairview Park Dr # 1, Elmsford, NY 10523.

7.      This Court has jurisdiction over Plaintiff's claims pursuant to federal law, including the ADA, Title VII, the ADEA, 42 U.S.C. § 1981, and 28 U.S.C. §§ 1331, 1343, 1367(a).

8.      Venue is proper in this district pursuant to federal law, including the ADA, Title VII, the ADEA, the ADA, 42 U.S.C. § 1981, and 28 U.S.C. § 1391.

## FACTS

9.      In or about 1999, Plaintiff began working for Coca-Cola Refreshments ("CCR"), a Coca-Cola bottling and distribution business, at its facility located in Elmsford, New York ("Elmsford Facility").

10.     Plaintiff was a production worker and a member of a union.

11.     In or about September 2013, Plaintiff suffered a workplace injury ("2013 Injury") while working for CCR.

12.     Specifically, while Plaintiff was working for CCR, a pipe exploded close to her.

13.     Plaintiff suffered injury to her lungs and other parts of her body.

14.     As a result of the 2013 Injury, Plaintiff was diagnosed with, among other items, asthma, which causes her to suffer various symptoms, including without limitation, chest tightness, wheezing, shortness of breath, and coughing.

15.     Plaintiff's asthma is chronic.

16.     Plaintiff's medical condition is a protected disability and substantially limits one or more of her major life activities, including without limitation breathing and movement.

-2-

17.     Upon information and belief, in 2017, two executives of CCR founded their own bottling and distribution business, which is the Defendant.

18.     In 2017, Defendant acquired various territory from The Coca-Cola Company.

19.     As a result of that 2017 transaction, in 2017, Defendant assumed operation and control of the Elmsford Facility from CCR.

20.     Plaintiff became an employee of Defendant and continued working as a production worker.

21.     Plaintiff was qualified for her position within the meaning of applicable law.

22.     Defendant received from CCR documents and records regarding Plaintiff and knew or should have known of Plaintiff's 2013 Injury.

23.     In addition, in or about early 2018, Plaintiff advised Defendant of her 2013 Injury.

24.     Defendant knew that Plaintiff has a disability, a history of a disability, and/or perceived and regarded Plaintiff as disabled.

25.     Defendant knew that Plaintiff was over age 50 and is African-American.

26.     Defendant targeted Plaintiff for separation, sought to coerce her to resign, and sought to set up Plaintiff for termination, because of her disability, age, race/color, because Plaintiff engaged in protected activity and/or because Plaintiff sought to exercise her protected rights in accordance with applicable law.

27.     Upon information and belief, Defendant also targeted for separation other employees in Plaintiff's protected classes and Defendant gave preferential treatment to persons outside Plaintiff's protected classes.

28.     After Plaintiff became an employee of Defendant, Plaintiff complained to Joan Richwine, Defendant's "Manager, Operational Excellence," about carbon dioxide gas in Plaintiff's work area and poor ventilation, all of which was unhealthy for Plaintiff because of her asthma.

29.     Richwine, aware of Plaintiff's disability, age and race/color, told Plaintiff in a

-3-

hostile tone words to the effect of, "I have to get you out of here."

30.     In addition, Defendant issued unfounded warnings to Plaintiff.

31.     Plaintiff declined to resign and Defendant escalated its unlawful conduct, looking for an opportune moment to terminate Plaintiff's employment.

32.     During 2018, Plaintiff had several absences because of her asthma-related disability.

33.     Plaintiff submitted notes to Defendant for those absences.

34.     Plaintiff's action constituted a request for reasonable accommodation of her disability.

35.     Defendant knew that Plaintiff's absences were due to her asthma-related disability.

36.     Defendant unlawfully and wrongfully denied Plaintiff a reasonable accommodation for her disability.

37.     During Plaintiff's employment, Defendant stated that it had an "attendance control program," that an employee would be penalized with points for un-excused absences ("Termination Points") and that accrual of six Termination Points would result in discharge of employment.

38.     During 2018, Defendant unlawfully and wrongfully assessed Termination Points against Plaintiff when she was absent because of her asthma-related disability.

39.     In August 2018, Defendant issued an unfounded "final warning" to Plaintiff, alleging that "Employee has accrued (5.75) points per the attendance control program."

40.     The alleged 5.75 Termination points included Termination Points unlawfully and wrongfully assessed against Plaintiff when she was absent as a result of her disability.

41.     During 2018, and prior to September 2018, Defendant told Plaintiff that it would not accept any further doctor's notes from her.

42.     Plaintiff asserted that Defendant's refusal to accept any further doctor's notes from her was because of her disability and age, which constituted a protected complaint of discrimination.

43.     On September 10, 2018, Plaintiff suffered another workplace injury ("2018 Injury") while working for Defendant.

44.     Specifically, Plaintiff, while working for Defendant, struck her head on a metal railing.

45.     Plaintiff reported the incident to Defendant.

46.     Defendant failed to prepare an injury report on September 10, 2018.

47.     On September 11, 2018, Plaintiff reported for work, but was unable to work because of her 2018 Injury.

48.     Plaintiff sought medical treatment and was diagnosed with a head injury, concussion, and neck pain.

49.     Plaintiff immediately commenced a medical leave.

50.     In early October 2018, Plaintiff returned to work.

51.     As a result of the 2018 Injury and resulting concussion, Plaintiff suffered and continues to suffer, severe headaches, severe dizziness, and other severe debilitating conditions.

52.     Plaintiff's medical condition constituted another protected disability, in addition to her asthma-related disability.

53.     Plaintiff's 2018 Injury and resulting concussion, severe headaches and severe dizziness, substantially limits her major life activities including without limitation walking, standing, and driving an automobile.

54.     Plaintiff advised Defendant of the 2018 Injury and resulting concussion, severe headaches, and severe dizziness.

55.     As of September 2018, Defendant knew that Plaintiff has multiple disabilities, a history of a disabilities, and/or perceived and regarded Plaintiff as disabled.

-5-

56.     In the early morning of October 9, 2018, Plaintiff awoke suffering severe dizziness, and other symptoms, from her concussion.

57.     Plaintiff was unable to drive to work and perform her job duties because of her concussion and the resulting severe dizziness caused by that concussion.

58.     Plaintiff called in sick and advised Defendant that she was feeling very dizzy because of her concussion, was unable to drive to work, and would need to be absent from work that day.

59.     Plaintiff's request constituted a request for a reasonable accommodation.

60.     Plaintiff's request for the day off did not impose any burden on the Company.

61.     Defendant had more than sufficient staffing of production workers at the facility.

62.     As of October 9, 2018, Plaintiff had at least one week of unused vacation days and an available floating holiday.

63.     On October 10, 2018, Plaintiff returned to work.

64.     Defendant looked for an opportune moment to terminate Plaintiff's employment, and Defendant fabricated a story that Plaintiff's October 9, 2018 absence was not permissible.

65.     On or about October 23, 2018, Defendant asked Plaintiff if she saw a doctor on October 9, 2018 for her concussion.

66.     Plaintiff responded to Defendant's question in the negative.

67.     Defendant asked Plaintiff to provide a doctor's note excusing her absence on October 9, 2018.

68.     Plaintiff advised Defendant that she could not provide such a note because she did not see a doctor on October 9, 2018 for treatment of her concussion.

69.     During Plaintiff's employment, the applicable collective bargaining agreement ("CBA") stated:  "Each employee claiming sick leave for two (2) days or more may be required by the Company to submit a written statement."

70.     Under the CBA, Plaintiff was not required to submit a doctor's note to Defendant

-6-

for her one-day absence on October 9, 2018.

71.     Moreover, as noted above, prior to September 2018, Defendant told Plaintiff that it would not accept any further doctor's notes from her.

72.     On October 26, 2018, Defendant told Plaintiff that she was terminated because (1) she was absent on October 9, 2018 and (2) she did not provide a doctor's note excusing that absence.

73.     Defendant's alleged grounds for termination are a pretext for unlawful discrimination based on disability, age, and race/color, unlawful denial of reasonable accommodation, unlawful discharge, and unlawful retaliation.

74.     Defendant unlawfully and wrongfully denied Plaintiff a reasonable accommodation for her disabilities and discriminated against Plaintiff because of her disability, age, and/or race/color.

75.     Defendant knew that Plaintiff had multiple disabilities, including without limitation resulting from two workplace injuries: the 2013 Injury and the 2018 Injury.

76.     Defendant knew that Plaintiff had requested a reasonable accommodation for her disabilities.

77.     Defendant knew that Plaintiff was absent on October 9, 2018 because of her concussion and resulting severe dizziness and that Plaintiff had called in sick that morning.

78.     Defendant knew that Plaintiff did not see a doctor on October 9, 2018 for her concussion and, therefore, could not provide a doctor's note for that absence.

79.     Defendant knew that Plaintiff had at least one week of unused vacation days and an unused floating holiday.

80.     Defendant unlawfully failed and refused to apply an unused vacation day or floating holiday towards Plaintiff's absence on October 9, 2018.

81.     Defendant knew that Plaintiff was absent on October 9, 2018 because of her disability and that such absence was not permissible grounds for assessment of Termination

Points and termination of employment.

82.    Defendant gave preferential treatment to employees outside Plaintiff's protected classes.

83.    Upon information and belief, Defendant gave preferential treatment to non-disabled employees, younger employees, and non-African American employees, regarding policies, procedures and standards for:  (1) attendance; (2) sick days; (3) application of unused vacation days and floating holidays towards absences; (4) corrective action/warnings; and (5) and termination of employment.

84.    Upon information and belief, Defendant did not assess Termination Points against or terminate employees outside Plaintiff's protected classes (1) when they called in sick or (2) when they called in sick and did not provide a doctor's note.

85.    In or about late June 2019, Plaintiff timely filed a charge of discrimination with U.S. Equal Employment Opportunity Commission ("EEOC") and the EEOC subsequently issued a notice of right to sue letter dated September 29, 2020.

## COUNT ONE

### (ADA)

86.    Plaintiff repeats and realleges every allegation in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

87.    This Count is brought under the ADA.

88.    Under the ADA, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

89.    Under the ADA, "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

90.     Under the ADA, "The term 'disability' means, with respect to an individual— (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;  (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

91.     Pursuant to the ADA Amendments Act of 2008, "The definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act."  Pub. L. 110-325, 122 Stat. 3553, *codified at* 42 U.S.C. § 12102(4)(A),

92.     Under the ADA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2).

93.     Plaintiff has physical impairments that substantially limits one or more major life activities, Plaintiff had a record of such impairments, and Defendant regarded Plaintiff as having such impairments.

94.     Defendant's conduct, as alleged herein, constituted unlawful discriminatory practices, unlawful discrimination based on disability, unlawful denial of reasonable accommodation, unlawful discharge, and unlawful retaliation, in violation of the ADA.

95.     Defendant engaged in unlawful conduct with malice and/or reckless indifference to Plaintiff's federally protected rights.

96.     As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation, lost earnings, lost wages, lost back pay and front pay, lost compensation, lost bonuses, lost benefits, lost interest and attorneys' fees and costs.

97.     As a further result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation,

emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

98.     Plaintiff is entitled to recover monetary and other damages, punitive damages, interest, and attorneys' fees and costs from Defendant.

99.     By reason of the foregoing, Plaintiff has been damaged, and is entitled to a judgment against Defendant, in an amount to be determined.

## COUNT TWO

### (NYSHRL)

100.    Plaintiff repeats and realleges every allegation in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

101.    This Count is brought under the NYSHRL, N.Y. Exec. L. § 290 *et seq*. and reference is made to the NYSHRL in its entirety.  *See also* N.Y. Exec. L. § 296.

102.    Under the NYSHRL, it is unlawful for an employer to discriminate against an employee based on disability, age, and race/color, it is unlawful for an employer to deny an employee a reasonable accommodation for a disability, and it is unlawful for an employer to retaliate against an employee that engages in protected activity thereunder.  N.Y. Exec. L. §§ 292, 296.

103.     Under the NYSHRL, "The term "disability" means (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held."  N.Y. Exec. L. §§ 292.21.

104.    Significantly, on August 12, 2019, Governor Andrew M. Cuomo signed legislation that substantially expanded and broadened the protections against discrimination and harassment in the NYSHRL.

105.    The legislation mandates, among other items, that the NYSHRL be *liberally construed* without reference to federal law that may lead to a more restrictive result.

106.    At all relevant times, Defendant was an "employer," "covered entity" and "person" within the meaning of the NYSHRL.  *See* N.Y.  Exec. L. § 292.

107.    At all relevant times, Plaintiff was an "employee" within the meaning of the NYSHRL, and a "person" and "individual" within the meaning of the NYSHRL.  *See* N.Y. Exec. L. §§ 292, 296.

108.    At all relevant times, Defendant was Plaintiff's employer.

109.    Defendant is liable for the unlawful conduct herein both as an "employer" under the NYSHRL and as a "person" under the "retaliation" provisions of the NYSHRL.  *See* N.Y. Exec. L. §§ 296(1), (7).

110.    Defendant's conduct, as alleged herein, constituted unlawful discriminatory practices, unlawful discrimination based on disability, age, and race/color, unlawful denial of reasonable accommodation, unlawful discharge, and unlawful retaliation, in violation of the NYSHRL.

111.    Plaintiff has suffered damages as a result of Defendant's unlawful conduct.

112.    As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation, lost earnings, lost wages, lost back pay and front pay, lost compensation, lost bonuses, lost benefits, lost interest and attorneys' fees and costs.

113.    As a further result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment

-11-

of life, and lasting embarrassment and humiliation.

114.    By reason of the foregoing, Plaintiff has been damaged, and is entitled to a judgment against Defendant, in an amount to be determined.

**COUNT THREE**

**(Title VII)**

115.    Plaintiff repeats and realleges every allegation in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

116.    This Count is brought under Title VII and reference is made to Title VII in its entirety.

117.    Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

118.    To state a claim under Title VII, the plaintiff must merely allege that the employer took adverse action against the plaintiff and that protected status was a substantial or motivating factor in the employment decision.  *See, e.g., Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).

119.    "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015).

120.    "[A]t the pleadings stage of an employment discrimination case, a plaintiff has a minimal burden of alleging facts suggesting an inference of discriminatory motivation." *Vega*, 801 F.3d at 85 (emphasis and internal quotation marks omitted).

121.    Upon information and belief, at all relevant times herein, Defendant was an

-12-

"employer", "covered entity" and a "person" within the meaning of Title VII.

122.    At all relevant times herein, Plaintiff was a "person" within the meaning of Title VII.

123.    Defendant took adverse action against the Plaintiff and Plaintiff's race/color and protected status was a substantial or motivating factor in the employment decision.

124.    Defendant's conduct, as alleged herein, constituted unlawful discriminatory practices, unlawful discrimination based on race/color, and unlawful discharge, in violation of Title VII.

125.    Defendant engaged in unlawful conduct with malice and/or reckless indifference to Plaintiff's federally protected rights.

126.    As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation, lost earnings, lost wages, lost back pay and front pay, lost compensation, lost bonuses, lost benefits, lost interest and attorneys' fees and costs.

127.    As a further result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

128.    Plaintiff is entitled to recover monetary and other damages, punitive damages, interest, and attorneys' fees and costs from Defendant.

129.    By reason of the foregoing, Plaintiff has been damaged, and is entitled to a judgment against Defendant, in an amount to be determined.

## COUNT FOUR

### (ADEA)

130.    Plaintiff repeats and realleges every allegation in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

131.    This Count is brought under the ADEA.

132.    Plaintiff is over age 50.

133.    Plaintiff engaged in protected activity within the meaning of the ADEA.

134.    Plaintiff opposed practices made unlawful by the ADEA.

135.    Plaintiff opposed, objected to and/or complained about age discrimination.

136.    Defendant's conduct, as alleged herein, constitutes unlawful discrimination based on age, unlawful discharge, and unlawful retaliation, in violation of the ADEA.

137.    Age was a "but-for" causation of the adverse employment action.

138.    Defendant committed a "willful violation" of the ADEA.

139.    As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation, lost earnings, lost wages, lost back pay and front pay, lost compensation, lost bonuses, lost benefits, lost interest and attorneys' fees and costs.

140.    Plaintiff is entitled to recover monetary and other damages, liquidated damages, interest, and attorneys' fees and costs from Defendant.

141.    By reason of the foregoing, Plaintiff has been damaged, and is entitled to a judgment against Defendant, in an amount to be determined.

## COUNT FIVE

### (42 U.S.C. § 1981)

142.    Plaintiff repeats and realleges every allegation in the preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

143.    Pursuant to 42 U.S.C. § 1981, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other" and

-14-

"the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

144.     Defendant's conduct, as alleged herein, constituted unlawful discriminatory practices, unlawful discrimination based on race/color, and unlawful discharge, in violation of 42 U.S.C. § 1981.

145.     Plaintiff's race/color were a but-for cause of the challenged action.

146.     Defendant engaged in unlawful conduct with malice and/or reckless indifference to Plaintiff's federally protected rights.

147.     Plaintiff has suffered damages as a result of Defendant's unlawful conduct.

148.     By reason of the foregoing, Plaintiff has been damaged, and is entitled to a judgment against Defendant, in an amount to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands judgment in favor of Plaintiff against Defendant, on all Counts, including as follows:

(A)     Award Plaintiff damages suffered by virtue of Defendant's violation of the ADA, the New York State Human Rights Law, Title VII, the ADEA, and 42 U.S.C. § 1981, in an amount to be determined;

(B)     Award Plaintiff damages for lost earnings, lost wages, back pay, front pay, lost compensation, lost bonuses, lost benefits, and other economic and actual damages, in an amount to be determined;

(C)     Award Plaintiff consequential damages, in an amount to be determined;

(D)     Award Plaintiff compensatory damages for, among other items, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in an amount to be determined;

(E)     Award Plaintiff punitive damages and exemplary damages, in an amount to be

          determined;

(F)     Award Plaintiff liquidated damages, in an amount to be determined;

(G)     Award Plaintiff the costs of this action, together with reasonable attorneys' fees, in an

          amount to be determined;

(H)     Award Plaintiff lost interest, in an amount to be determined;

(I)      Award Plaintiff any and all other damages and relief requested herein;

(J)     Award Plaintiff any and all other damages and relief provided by the applicable statutes

          and applicable law, in an amount to be determined; and

(K)     Award Plaintiff such further damages and relief as may be just and proper, in an amount

          to be determined.

## JURY DEMAND

Plaintiff demands a jury trial for all issues triable.

Dated:  New York, New York
           December 28, 2020

                                                  GOLDBERG & FLIEGEL LLP
                                       By:      /s/ Kenneth A. Goldberg
                                                  Kenneth A. Goldberg
                                                  GOLDBERG & FLIEGEL LLP
                                                  488 Madison Avenue, #1120
                                                  New York, New York 10022
                                                  (212) 983-1077
                                                  kgldbrg@aol.com
                                                  Attorneys for the Plaintiff